**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CHARMAIN RONIGER, ) | |
| ) | CASE NO.   1:09-cv-03025 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
|    Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Charmain Roniger ("Roniger") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Roniger's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court VACATES and REMANDS the final decision of the Commissioner for further proceedings consistent with this opinion.

**I. Procedural History**

On June 26, 2006, Roniger filed an application for POD, DIB, and SSI alleging a disability onset date of March 15, 2002, and claiming that she was disabled due to depression, sleep disturbance, fibromyalgia, chondromalacia, and carpal tunnel syndrome.[1] Her application was denied both initially and upon reconsideration. Roniger timely requested an administrative hearing.

On March 31, 2009, an Administrative Law Judge ("ALJ") held a hearing during which Roniger, represented by counsel, testified. Bruce Holderead testified as an impartial vocational expert ("VE"). On April 28, 2009, the ALJ found Roniger was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

**II. Evidence**

*Personal and Vocational Evidence*

Born on February 23, 1957, and age forty-five (45) on the alleged disability onset date, Roniger is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). Roniger has a high school education and past relevant work as a licensed practical nurse ("LPN").

---

[1] Roniger had a previous application for benefits denied on December 8, 2005, after a hearing before a different ALJ. Therefore, Roniger's earliest possible onset date is December 9, 2005. (Tr. 11.)

*Hearing Testimony*

At the hearing, Roniger testified to the following:

- She had worked as an LPN at nursing homes, in private homes, and with agencies. (Tr. 27.)

- She had two surgeries on her right knee, which yielded some improvement at first, but pain returned. (Tr. 28.) She had resumed using a cane. *Id.*

- She has a small tear of her achilles tendon in her left foot, which would require surgery. (Tr. 29.)

- She experiences pain in her back, neck, shoulders, and both hands. (Tr. 30-31.) She has also been diagnosed with Reynaud's disease, which causes her hands to become cold and turn blue. (Tr. 31.)

- She cannot lift much, but can lift a gallon of milk and once every other month she would carry a 16 pound bag of dog food from the car to the house. (Tr. 32-33.)

- She can walk for maybe a tenth of a mile. (Tr. 33.) Walking causes pain in her foot and knee, but it is the worst in her back. (Tr. 34.) She rated the pain in her back as a 5 of 10 on an average day even with medication. *Id.* She guessed that her pain would be 8 of 10 or 9 of 10 without the use of medication. *Id.*

- She sees a counselor every three months for treatment of her depression. (Tr. 34.) She has a prescription for Wellbutrin. *Id.* Her depression makes it difficult to get out of bed some days – approximately ten days per month. (Tr. 36-37.) She also experiences wild mood swings and tends to withdraw from other people. (Tr. 36.)

- She experiences problems sleeping. Her medications help her fall asleep, but do not help her stay asleep. (Tr. 36.)

- She can do laundry with assistance, but cannot carry the baskets. She can do some light, simple cooking. She vacuums her own room once a month. She does some shopping, but not for groceries. (Tr. 38-39.)

- Prior to hurting her foot, she attended water class for arthritis three times per week at the YMCA. She also tries to go to church, but does not make it every week. (Tr. 39.)

- As far as hobbies, she sometimes sews and makes flower arrangements and wreaths for a total of one to two hours per week. (Tr. 39.)

> • She cannot work sitting down because her muscles cramp up, she has to get up and walk every half hour to forty-five minutes, and she needs to constantly change positions. (Tr. 41.)

The ALJ posed the following hypothetical question to the VE:

> All right, so we have an individual 48 to 50 years of age, 12th grade education, past work you've identified, the LPN license has expired, and I'd like you to assume that this person would be limited to lifting, carrying, pushing, pulling 20 pounds occasionally, 10 pounds frequently. Sitting can be a total of six in eight, let's say, one hour at a time. Standing and walking can be six hours in eight total, one hour at a time. And then, the position changes need to be for a minute or two every hour. These are occasional: balancing, stooping, crouching, ramps, and stairs. Kneeling and crawling are never. No ladders, ropes, or scaffolds. No concentrated exposure to pulmonary irritants. Task complexity should be either simple to moderate if it's something that's unfamiliar, or this person would be able to perform skilled or semiskilled tasks that, that she's already familiar with. Interaction with others would be superficial. No rigorous production pace, and no strict production quotas.

(Tr. 45.)

The VE testified that such a person could not perform Roniger's past relevant work. (Tr. 46.) The VE did, however, find that such a person could perform several other jobs including: marker, Dictionary of Occupational Titles ("DOT") § 209.587-034; photocopy machine operator, DOT § 207.685-014; and, mail clerk, DOT § 209.687-026. (Tr. 46-47.)

The ALJ posed another hypothetical to the VE, indicating that the hypothetical person should be limited to sedentary work: "same hypo, but sedentary, so that would be 10 pounds occasionally, and the standing and walking would be a total of two hours in eight. Otherwise, everything the same." (Tr. 49.) The VE testified that such a person could perform several jobs and cited the following as examples: charge account clerk, DOT § 205.367-014; order clerk, food and beverage, DOT § 209.567-014; and, addresser, DOT § 209.587-010. (Tr. 49.)

Based on additional limitations of only occasional handling or fine fingering suggested

4

by Roniger's counsel, the VE opined that such a person could not perform any light or sedentary exertional work. (Tr. 51.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Roniger was insured on her alleged disability onset date, December 9, 2005, and remained insured through December 31, 2007. (Tr. 11-13.) Therefore, in order to be entitled to POD and DIB, Roniger must establish a continuous twelve month period of disability commencing between December 9, 2005 and December 31, 2007. Any discontinuity in the

---

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Roniger established medically determinable, severe impairments, due to fibromyalgia, brachial neuritis, chondromalacia, plantar fasciitis, carpal tunnel syndrome, Achilles tendonitis, heel spurs, obesity, asthma, and depression. However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Roniger is unable to perform her past work activities, but has a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Roniger is not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been

defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")

### VI. Analysis

Roniger claims the ALJ erred by: (1) finding that she retained the capacity for a limited range of light work when the record only supported a limited range of sedentary work; (2) failing to find that she had limitations in her ability to use her hands and wrists; and, (3) conducting an insufficient credibility analysis regarding her complaints of pain.

*Light Exertional Work*

Roniger claims that the ALJ erred by finding that she retained the capacity for a limited range of light work when the record supported only a limited range of sedentary work. (Pl.'s Br. at 15-17.) Roniger argues that the ALJ should not have adopted the assessment made by Paul Morton, M.D., a reviewing physician for the State Agency on August 26, 2006, because later medical evidence shows her impairments had become progressively worse. *Id*. The

7

Commissioner asserts that the ALJ did not simply adopt Dr. Morton's RFC assessment, but actually added additional functional restrictions in light of subsequent medical evidence. (Def.'s Br. at 10-14.)

Both parties agree that, since Roniger had a previous application for benefits denied on December 8, 2005, the ALJ was bound by the prior ALJ's findings of fact absent new, material evidence showing changes in Roniger's condition. (Pl.'s Br. at 15; Def.'s Br. at 10-11.) Both parties cite *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) as controlling.

Roniger contends that the first ALJ's finding, that she suffered from degenerative disc disease, was not adopted by the second ALJ as required by *Drummond*. (Pl.'s Br. at 15-16.) However, the ALJ did discuss subsequent evidence of record. (Tr. 17; Tr. 369-374 "Exh. 5F".) In an examination dated August 1, 2006, David R. Blatt, M.D., observed that an MRI did not reveal any evidence of disc herniation or pathology in Roniger's back, and that she had good range of motion in her cervical spine. (Tr. 373-74.) Dr. Platt opined that Roniger's spine pain "was due to her fibromyalgia" and that she "[d]oes not need cervical spine surgery." *Id*. Thus, the ALJ was not bound to follow the prior ALJ's finding given the new and material evidence of record.

In addition, Roniger asserts that the ALJ did not give effect to the first ALJ's finding that she could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. *Id*. (citing Tr. 82.) Dr. Morton's RFC assessment did echo these limitations. (Tr. 492-99.) Roniger accurately states that the second ALJ did not adopt the first ALJ's limitations with respect to kneeling or crawling. However, her dispute with the ALJ's assessment with respect to kneeling or crawling is puzzling. The ALJ expressly gave no weight to Dr. Morton's opinion that Roniger

8

could occasionally crawl and kneel, and instead found that new evidence, unavailable to Dr. Morton, justified "further limitations with kneeling and crawling." (Tr. 19.) In his hypothetical to the VE setting out a limited range of light work, the ALJ specifically stated "[k]neeling and crawling are never." (Tr. 45.) To the extent Roniger's argument is based on the omission of a prohibition against kneeling or crawling in the summary portion of the ALJ's decision (Tr. 15), the Court finds such argument to be without merit. The ensuing discussion of the ALJ, combined with the inclusion of the prohibition against kneeling and crawling in the hypothetical, clearly incorporates a restriction that is more favorable to Roniger than the first ALJ's opinion.

Roniger next argues that the standing/walking ability found by the first ALJ – 6 hours in an 8-hour workday – should have been modified since subsequent medical evidence established that the condition of her knee had worsened. (Pl.'s Br. at 17; *see* Tr. 82.) It is clear the ALJ considered changes in her medical condition since the December 2005 decision:

> In terms of Ms. Roniger's alleged knee pain, the evidence establishes that she had her first knee surgery in 2002 and a second surgery in April 2008 after being diagnosed with a right knee medial meniscus tear and osteoarthritis (Exhibit 27F). Following the surgery, she began physical therapy for the knee but missed an appointment on May 12, 2008 (Exhibit 29F at 27). Ms. Roniger admitted to her treating physician the following day that physical therapy had significantly decreased her pain and improved her range of motion (Exhibit 29F at 22-23). A few weeks later, Ms. Roniger requested that her physical therapy be cancelled (Exhibit 29F at 19).
>
> Treating orthopedist Dan Single, M.D., saw Ms. Roniger on June 24, 2008 and noted her complaints that her knee pain was no better than prior to the second surgery. However, she admitted that she had started swimming again. Dr. Single found no redness, swelling, effusion or warmth on examination. He consistently noted that Ms. Roniger was "morbidly obese" and said she had not lost any weight since he started treating her. He found only minimal tenderness in the knee and described the knee as "stable." He wrote that Ms. Roniger had a poor pain tolerance and that "her pain exceeds the organic pathology" (Exhibit 29F at 8). On July 7, 2008, Dr. Single reported that Ms. Roniger failed to show up for what would have been her third follow up appointment since her knee surgery

>   (Exhibit 29F at 2).
>
>   I note that Ms. Roniger did bring a cane to the hearing but carried it in and was not leaning on it. The record shows that she was prescribed one for a period in 2005, but there is no medical record for the period currently before me that a cane has been prescribed or is a medical necessity. Nonetheless, the residual functional capacity I assessed accommodates a change of position each hour and gives Ms. Roniger the benefit of the doubt. She testified that she has been using her cane since her second knee surgery in 2008. However, her use of a cane is not necessarily consistent with the fact the she apparently did not feel the need to follow up as ordered to by her treating orthopedist.

(Tr. 16-17.)

It is evident that the ALJ considered the new medical evidence of record since the first hearing decision, but did not find that the evidence justified a greater restriction in Roniger's ability to stand/walk. This Court cannot say that the ALJ's interpretation of the evidence was unreasonable or that his decision was not based on substantial evidence.

***Limitations in Hands and Wrists***

Roniger also argues that the ALJ erred by not accepting a functional limitation, as suggested by her counsel, that would limit her to only occasional gross and fine manipulation. (Pl.'s Br. at 17-19.) A hypothetical question posed to a VE must precisely and comprehensively set out every physical and mental impairment of the applicant that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by the evidence in the record, it need not reflect unsubstantiated allegations by claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). An ALJ's hypothetical question is not erroneous where at least one doctor substantiates the information contained in the question. *See Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987) (*per curiam*). Roniger appears to

10

argue that the hypothetical question posed by her counsel was supported by substantial evidence, and, therefore, the ALJ should have adopted the further restrictions.

An ALJ's decision will be affirmed if it is supported by substantial evidence.  It is immaterial if substantial evidence also supports a contrary position.  *See, e.g., Kirby v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 182, 183 (6th Cir. 2002) (Commissioner's decision must be upheld if substantial evidence supports it regardless of whether substantial evidence supports claimant's position); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (a court must uphold the decision of the Commissioner even when substantial evidence exists to support both the Commissioner and the claimant); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) (substantial evidence can exist to support and detract from the ALJ's decision); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion).  The substantial evidence standard "presupposes that there is a zone of choice within which the [ALJ] can go either way, without interference by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Williamson v. Apfel*, 1998 U.S. App. LEXIS 30010 at *13 (6th Cir. 1998) *quoting Mullen*, 800 F.2d at 545.

Thus, a claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position and contradicts the finding of the ALJ.  Rather, Roniger must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion.  Roniger has failed to draw this Court's attention to any deficiency in the ALJ's reasoning.  Moreover, Roniger has failed to point to any evidence of record that would have compelled the ALJ to adopt a hypothetical as restrictive as the one posed

11

by her counsel.  Though Roniger cites portions of the record that indicate some problems with her hand, including a diagnosis of carpal tunnel syndrome, she does not cite any physician's opinion from the relevant time frame (*i.e.* after the December 8, 2005 decision) that she was limited in her gross and fine manipulation abilities.[3]  (Pl.'s Br. at 17-19.)  The ALJ analyzed evidence from the applicable time frame, and noted as follows:

> In terms of Ms. Roniger's alleged carpal tunnel syndrome, she was examined by neurologist Larry Dashefsky, M.D., in October 2006.  Physical examination at that time was unremarkable.  Dr. Dashefsky ordered an EMG with nerve conduction study of the left upper extremity dated December 12, 2006.  Results were completely within normal limits (Exhibit 21F).

(Tr. 17.)  The ALJ expressly noted that he did not find support in the record for the manipulative limitations suggested by counsel.  (Tr. 21-22.)  The ALJ's hypothetical was supported by substantial evidence, and Roniger's assignment of error is not well taken.

*Fibromyalgia and Credibility Assessment*

Roniger asserts that the ALJ erred in his analysis of her fibromyalgia.  (Pl.'s Br. at 19-21.)  It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability.  *See Kirk v. Sec' of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms.  First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment.  Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms."

---

[3] The prior decision did not find that Roniger had any limitations in her abilities of fine and gross manipulation. (Tr. 81-82.)  The only medical opinion that restricts Roniger's use of her hands and/or arm came from Sung Ki Min, M.D., on December 5, 2005.  (Tr. 238.)  Dr. Min noted that Roniger had complained of pain in her left elbow for the past nine months, and he "recommended that [she] try to avoid the repetitive motion that is exacerbating this pain." *Id*.

SSR 96-7p.  Essentially, the same test applies where the alleged symptom is pain, as the Commissioner must (1) examine whether there is objective medical evidence of an underlying medical condition.  If there is, then the Commissioner must examine whether (2)(a) the objective medical evidence confirms the alleged severity of pain, *or* (2)(b) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.  *See Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).  It is evident that the ALJ accepted that Roniger suffered from fibromyalgia, a severe impairment.  (Tr. 14.)  Furthermore, the ALJ found that "Roniger's medically determinable impairments could reasonably be expected to cause the alleged symptoms" – namely pain.[4]  (Tr. 16.)

In contrast to most other medical impairments, it is difficult to find corroborative medical evidence in fibromyalgia cases.

> Fibromyalgia, also referred to as fibrositis, is a medical condition marked by "chronic diffuse widespread aching and stiffness of muscles and soft tissues." *Stedman's Medical Dictionary for the Health Professions and Nursing* at 541 (5th ed. 2005).  We note also that ours is not the only circuit to recognize the medical diagnosis of fibromyalgia as well as the difficulties associated with this diagnosis and the treatment for this condition.  *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (noting that fibromyalgia's "causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective"); *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) ("Fibromyalgia, which is pain in the fibrous connective tissue of muscles, tendons, ligaments, and other white connective tissues, can be disabling."); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2nd Cir. 2003) (noting that "a growing number of courts . . . have recognized that fibromyalgia is a disabling impairment and that there are no objective tests which can conclusively confirm the disease") (internal quotation

---

[4] Presumably, the ALJ's finding included all of Roniger's impairments capable of producing pain – fibromyalgia, brachial neuritis, chondromalacia, plantar fasciitis, carpal tunnel syndrome, Achilles tendonitis, and heel spurs – though not all of these were discussed in the credibility finding.

>marks and citations omitted); *Welch v. Unum Life Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004) ("'Because proving the disease is difficult . . ., fibromyalgia presents a conundrum for insurers and courts evaluating disability claims.'") (*quoting Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1067 (9th Cir. 1999)).

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 n. 3. (6th Cir. 2007); *see also Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988); *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 915 (3rd Cir. 2003). Therefore, objective medical evidence corroborating allegations of pain will most likely be minimal, resulting in even greater emphasis on the credibility of a claimant's subjective allegations regarding the severity of her pain.

Here, the ALJ found that Roniger's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with his RFC assessment. (Tr. 16.) Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *Cross*, 373 F. Supp. 2d at 733 (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in

14

the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")  To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record.  *See* SSR 96-7p.  Beyond medical evidence, there are seven factors that the ALJ should consider.[5]  The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence.  *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005).

Here, the decision lacks any discussion concerning the credibility of Roniger's pain stemming from fibromyalgia.  This is particularly troubling as the credibility determination in fibromyalgia cases is of "paramount importance" because its symptoms are entirely subjective.  *See, e.g., Wines v. Comm'r of Soc. Sec.*, 268 F. Supp.2d 954, 960 (N.D. Ohio 2003).  Although the ALJ discusses a variety of Roniger's other impairments such as knee surgery, ossification of her Achilles tendon, carpal tunnel syndrome, and back pain, the discussion of these impairments (Tr. 16-18), which likely cause pain as well, does not relieve the ALJ of his duty to discuss the allegations of disabling pain due to fibromyalgia.  Moreover, the ALJ appeared to discount the limitations of those separate impairments due to normal or unremarkable objective medical findings, which are inapplicable in fibromyalgia cases.  The ALJ did discuss the side effects of

---

[5] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 375 F. Supp. 2d 724, 732 (N.D. Ohio 2005).

Roniger's medication, but notably, did *not* discuss whether the medication effectively relieved her pain symptoms. (Tr. 18.) Regarding Roniger's daily activities. The ALJ remarked as follows:

> At the hearing, Ms. Roniger said she can do laundry, cook, vacuum, dust, shop, attend church, make crafts, arrange flowers, and care for pets. The evidence establishes that she is able to exercise, feed and walk her dog, prepare meals, do laundry, drive a car, shop, crochet, sew, make crafts, attend church, vacuum (Exhibit 4E), swim, care for a guinea pig, perform self-care, sweep floors, use a computer (Exhibit l1E), ride a bicycle (Exhibit IF at 10), complete paperwork without difficulty, and make floral arrangements (Exhibit 10F). Her activities of daily living are not as limited as one would expect given the allegations of disabling symptoms.

(Tr. 18.)

The ALJ's recitation of Roniger's "daily" activities is misleading. Though Roniger testified to all of the above activities, the ALJ neglects to mention the very limited scope of the activities. For example, Roniger testified that while she does her own laundry, her parents carry the baskets up and down the steps. It takes her two to three days to do laundry, and she only does it every "couple of weeks." (Tr. 38) She can cook simple meals such as heating up hot dogs or making macaroni and cheese, but her parents cook meals that are more involved. *Id*. She vacuums and dusts only her own room about once a month. *Id*. She stated that while she does some shopping, she does not buy groceries for the family, but only personal items such as prescriptions and toiletries. (Tr. 38-39.) She attends church, but does not do so every Sunday. (Tr. 39.) She spends about two hours a week working on crafts. (Tr. 40.) Roniger testified that while she bought dog food once every two months and could carry an approximately sixteen pound bag from the car to the house, she could not do so twice in a row. (Tr. 33.) Her treatment plan included pool therapy (Tr. 231), which Roniger stated she attended three times a week prior

16

to hurting her foot. (Tr. 41.)

In sum, the ALJ did not address the limiting effects of pain caused by Roniger's fibromyalgia. Even if the ALJ's failure to expressly mention fibromyalgia in his credibility analysis could be deemed harmless, the ALJ neglected to explain how Roniger's occasional and infrequent activities performed for a limited amounted of time on a weekly or monthly basis undermine her allegations of disabling pain, how her medications alleviate or fail to alleviate her pain, what other treatments were used, if any, or what other factors concerning her functional limitations and restrictions were relevant. "[A court] cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). Because the ALJ did not provide an analysis that is sufficiently specific, Roniger's argument that the ALJ failed to properly articulate a basis for his credibility finding is well-taken. The Court is unable to trace the path of the ALJ's reasoning. Though the ALJ certainly was not bound to find Roniger's allegations credible, the underlying analysis was insufficient under the Administration's procedural rules.

For the foregoing reasons, the Court orders this case be remanded for a new decision containing an analysis that explains the basis of the ALJ's credibility findings and conclusions with enough clarity to allow a meaningful review.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner failed to follow the Social Security Administration's procedures. Accordingly, the decision of the

17

Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

  IT IS SO ORDERED.

                <u>s/ Greg White</u>
                U.S. Magistrate Judge

Date: October 1, 2010